122

## O'LEARY, In Re

Ohio Appeals, 2nd Dist, Preble Co.

No. 100.   Decided Dec. 28, 1939.

S. B. Foos, Eaton and John P. Burke, for appellant.

## OPINION

By HORNBECK, PJ.

This appeal noted as on questions of law and fact is directed to an order of the Common Pleas Court which reads as follows:

"This cause came on to be heard on an **attempted** appeal on questions of law and fact from the order of the Probate Court on April 2, 1937, whereby the appellant was adjudicated insane and committed to the Dayton State Hospital. The court on hearing the evidence and arguments of counsel and on consideration thereof finds that said appeal is not well taken and hereby dismisses said appeal to which finding appellant excepts." (Emphasis ours).

At the outset we quote this entry because its terms indicate that the appeal may have been dismissed as upon some other grounds than the merits.

We find among the papers certain testimony which appears to have been taken on the appeal in the Common Pleas Court of date March 4, 1938, but there is nothing which settles or authenticates this evidence as a Bill of Exceptions.

We are satisfied that the appeal to this Court is properly presented as upon law only.  As we have no bill of exceptions there is no evidence before this court and we can only consider such errors as may appear from the transcript of docket and journal entries from the Probate and Common Pleas Courts.

If this appeal were properly before us as to all matters it would present novel and interesting questions of law.

We glean from all available sources, some of which we cannot properly consider, that in April, 1937, William Francis O'Leary, then a minor, was committed to the Dayton State Hospital as an insane person.  The hearing on the inquest was heard in the morning of said day at which time there were present the minor and two physicians. At the time of the hearing no affidavit as provided in §1953 GC had been filed with the Probate Judge.  Such an affidavit was made by Mary O'Leary, a sister of the minor, on the afternoon of said day and after the minor had been transferred to the hospital.   Neither, guardian, parent of the minor, both of whom were then living, nor any relative was notified of the inquest.

The Probate Judge acted upon the testimony and certificate of the two physicians which certificate is complete and in due form and would support the conclusion that the minor was an insane person.

Some time after the minor was committed to the hospital an arrange-

ment was made whereby his mother took him to Dr. McClelland, a practicing physician in the City of Dayton, former Superintendent at the State Hospital, who, after examination, diagnosed the condition of the minor to be the result of streptococcic infection originating in his teeth.

Thereafter the infected teeth were drawn and the minor made a complete and comparatively rapid recovery and later was discharged from the hospital as recovered, effective October 11, 1937.

On November 3, 1938, Mr. O'Leary, who had then attained his majority, moved the Probate Court to vacate and modify the former findings and orders adjudging him to be an insane person and assigned nine grounds as the basis of his motion.

The principal legal propositions urged in the motion were that the court in adjudging appellant to be an insane person acted without jurisdiction for the reason that at the time of the hearing no affidavit asserting that the affiant believed Mr. O'Leary to be an insane person and setting out the other requisites of §1953 GC was on file in the Probate Court; that no notice or summons had been issued to a parent or next of kin of Mr. O'Leary and that no guardian ad litem was appointed for him.

The Probate Court denied the motion but did carry into the entry journalizing his order the finding that prior entries in the court, reciting that Jennie O'Leary (mother of appellant) filed the affidavit for the admission of said William Francis O'Leary into the Dayton State Hospital and that the testimony of Jennie O'Leary was taken at the inquest, were incorrect.

The court further found that Jennie O'Leary had no notice from the court as to the filing of an affidavit or the time of hearing thereof and that she first entered her appearance in the cause upon the hearing on the motion to vacate and modify. The court further finds that,

"An inquest of lunacy is a statutory proceeding wherein no provision is made for notice to guardian, father or mother of minors or for an appointment of a guardian ad litem."

It will be observed that no mention is made in this entry as to the time when the affidavit under §1953 GC was filed in the Probate Court.

An appeal was then taken to the Common Pleas Court on questions of law and fact and presumably testimony was taken which we find in the papers but is not authenticated.

In this testimony it appears that the affidavit in the case was not filed by Jennie O'Leary, mother of the minor in whose name it probably had been prepared but by Mary O'Leary, a sister of the minor, and further that this affidavit was not filed until the afternoon of the day of the inquest and after the minor had been transported to the hospital.

It is obvious that in this court we have no factual proof properly before us which would enable us to say that the affidavit in this case was not before the Probate Court at the time of the hearing on the inquest. So that, the effect of the failure to have the affidavit before the court prior to and at the time of the hearing cannot be determined.

Upon the second question, namely, the necessity of naming a guardian ad litem or giving notice to guardian or parent of the minor, it is our judgment that under the law controlling at the time of the inquest in this case neither notice nor appointment of guardian ad litem was requisite to the right to adjudge the question before the court at the inquest.

Sec. 11252 GC providing for the appointment of a guardian for the suit is found in Title 4, Division 2, Chapter 2 of Procedure in Common Pleas Court and relates to parties in civil actions. The proceedings here under consideration can not be classified as a civil action.

Secs. 1953 et seq. GC have now been superseded by §§1890-22 et seq. GC, effective January 1, 1938. Sec. 1890-25 now provides that,

"No hearing shall be had upon the affidavit provided for in Section 23 of this act, until the Probate Judge has caused written notice by mail or otherwise as the court may direct, to be given to the following persons residing within the county. (1) Any one person, whether a relative or not, designated by such person when such person is competent to make a selection. (2) Any person or persons that the Probate Judge determines should have notice of such hearing."

The fact that there was no provision for notice in the former statute is persuasive that it was not essential to jurisdiction.

It will further be noted that the provision for notice now appearing does not designate that it shall be given to such person as would be required to be served in a civil action against a minor.

Upon such matters as are properly before us and which we have authority to consider we can find no prejudicial error in the judgment of the Common Pleas Court.

Although it is not pertinent to any germane legal inquiry in this case we are cognizant of the distress which has resulted to Mr. O'Leary, his relatives and especially his mother by reason of the action in the Probate Court. We would not minimize the effect of the adjudication but are of opinion that Mr. O'Leary and his family may be over-sensitive and over-apprehensive of the ill effects following the determination that at the time of the inquest Mr. O'Leary was mentally ill.

Insanity has as many forms as any other kind of sickness. It is but a manifestation that one function of the body is impaired. This may be of permanent nature or temporary, as was found in the instant case.

It is not unusual for sickness to manifest itself in temporary derangement of the mental faculty.

Our legal procedure at this time incident to the treatment of those who may be mentally affected is humane and what was formerly commonly called insanity is now recognized as mental illness.

In this case no odium whatever should or will attach to the fact that Mr. O'Leary was temporarily mentally ill. The cause has been found and removed and there is nothing whatever in the whole matter that reflects in the slightest degree upon Mr. O'Leary or his family.

It is also conceded that everybody concerned with the inquest acted in good faith and the Probate Judge made the order only after obtaining the professional opinion of two qualified physicians. That they did not make the diagnosis of the cause of Mr. O'Leary's illness is not to be criticized because not to be expected under the circumstances and in probability it was in the field of the specialist.

In one sense it was of advantage to Mr. O'Leary and his family that the inquest was held because thereby, though indirectly, he was brought under the ministration of Dr. McClelland, who was able to and did bring about his cure.

If we could with propriety expunge the record of the inquest from the records, we would do so but we have no such power nor can we find that the Probate Judge has violated any legal right of the appellant.

Judgment affirmed.

GEIGER and BARNES, JJ., concur.

## APPLICATION FOR REHEARING

No. 100. Decided May 9, 1940.

BY THE COURT:

Submitted on application of appellant for rehearing.

We have given very definite consideration to this application and are cognizant of the unfortunate predicament in which the appellant was placed by the action of the Probate Judge. However, the court took this case at regular session, it was presented by counsel, the action of the court was invoked and we have passed upon it. We do not believe that it is contemplated that §12223-8 GC be given application in the situation here presented.

The application for rehearing will be denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.